THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. RICHARD LOMBARD, Appellant.

First Department, December 10, 1957.

*Arnold E. Wallach* of counsel (*Max Fruchtman,* attorney), for appellant.

*Irving Anolik* of counsel (*Walter E. Dillon* with him on the brief; *Daniel V. Sullivan, District Attorney*), for respondent.

VALENTE, J.    The appellant Lombard, and one Dominick De Gennaro were indicted jointly, tried and convicted of the crime of attempted robbery, first degree.    On this appeal Lombard urges that he was deprived of a fair trial by the admission in evidence of a confession of the codefendant De Gennaro, implicating appellant in the commission of the crime; and by the prosecutor's improper use of that confession.

The testimony established that on July 20, 1955, at about 1:25 P.M., De Gennaro, together with another man, attempted to steal a payroll at the Altro Workshop, Inc. in The Bronx. In the course of the holdup, shots were fired and both De Gennaro and a private guard were wounded.    De Gennaro's accomplice escaped.    Following his arrest, De Gennaro made a statement to the District Attorney confessing his participation in the attempted robbery and inculpating Lombard.    It was not until November, 1955 that Lombard was apprehended in up-State New York.

As to Lombard, the trial centered on the issue of identification.    He was identified as a participant by the wounded guard and by an employee of Altro Workshop.    Additionally, the prosecution offered evidence of Lombard's flight as pointing to his guilt.    The defense was alibi, and an attempted explanation of Lombard's absence from his home after the holdup. Lombard testified on his own behalf and admitted three prior felony convictions.

In its case against De Gennaro, the prosecution relied, in the main, on De Gennaro's own admissions to a police officer immediately after his arrest as well as the confession made thereafter to the District Attorney.    What is more, De Gennaro took the stand, admitted his guilt in the robbery and denied Lombard's complicity.

While the proof in the record is sufficient to support the verdict as to Lombard and his conviction would be justified on the evidence adduced, we hold that the conduct of the trial — particularly with respect to the improper use of De Gennaro's confession as against Lombard — was such as to deny Lombard the fundamentals of a fair trial. Hence, we must reverse and grant a new trial. (*People* v. *Savvides,* 1 N Y 2d 554, 558; *People* v. *Mleczko,* 298 N. Y. 153, 163.)

Two police officers testified as to De Gennaro's admissions to them in which he not only admitted his part in the crime, but also implicated Lombard. Moreover, De Gennaro's statement to the District Attorney — in question and answer form — was received in evidence. There too, De Gennaro confessed his guilt, again named Lombard as an accomplice and detailed Lombard's activities in the preparation for, and participation in, the unsuccessful holdup. These declarations by De Gennaro, after the enterprise had ended, were not admissible in evidence as against Lombard. (*People* v. *Ryan,* 263 N. Y. 298, 305.)

However, it is well settled that where joint defendants are on trial, the confession of one defendant will be admitted in evidence, even though implicating the codefendant, provided the jury is clearly instructed as to the limitations of the evidence as applying only to the declaring defendant. (*Stein* v. *New York,* 346 U. S. 156, 194–196, affg. 303 N. Y. 856; *Delli Paoli* v. *United States,* 352 U. S. 232; 43 Corn. L. Q. 128; 56 Col. L. Rev. 1112; 23 Brooklyn L. Rev. 314). The theory of admissibility of such evidence rests on the presumption that the nonconfessing defendant's rights are adequately protected by adequate admonition by the court to the jury as to its limiting effect. The efficacy of instructions to eradicate from the minds of the jury the damaging evidence against the nondeclaring defendant has been seriously questioned.*

---

* See dissenting opinion of FRANKFURTER, J., in *Delli Paoli* v. *United States* (352 U. S. 232, 247).

In *Nash* v. *United States* (54 F. 2d 1006, 1007) Judge LEARNED HAND, after denominating the instruction a subterfuge, wrote: "In effect, however, the rule probably furthers, rather than impedes, the search for truth, and this perhaps excuses the device which satisfies form while it violates substance; that is, the recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody else's."

In *Krulewitch* v. *United States* (336 U. S. 440, 453) Justice JACKSON said: "The naive assumption that prejudicial effects can be overcome by instructions to the jury, *cf., Blumenthal* v. *United States,* 332 U. S. 539, 559, all practicing lawyers know to be unmitigated fiction."

Of course, prejudice may be avoided by separate trials. Since, however, the defendants were indicted jointly, the statute (Code Crim. Pro., § 391) vests discretion in the Trial Judge to determine whether the defendants shall be tried together or separately. (*People* v. *Fisher,* 249 N. Y. 419). In any event, there was no motion here for a separate trial and we need not review that question.

The grave danger of prejudice to Lombard in admitting into evidence De Gennaro's confession — in the light of what happened later on summation — was not eliminated by the court's instruction from time to time, that it was not binding on Lombard. As the Court of Appeals has said, such instructions are easy to give but hard to follow. (*People* v. *Marshall,* 306 N. Y. 223, 228.) Moreover, such instructions, when given, should not take the form of mere ritualistic intonations; initially they should be clear rulings which explain to the jury at the moment of their admission the reasons for the rule and impress upon them the necessity for strict adherence to the limitations imposed. Those admonitions should be reiterated in the charge. As Justice RUTLEDGE said in *Blumenthal* v. *United States* (332 U. S. 539, 560): " the risk of transference of guilt over the border of admissibility " must be " reduced to the minimum ".

In view of the limited character of the evidence of De Gennaro's confession, the safeguards which the law threw about its use against Lombard were completely dissipated by the arguments which the District Attorney advanced in his summation with reference to the contents of the confession and De Gennaro's admissions.* We unanimously conclude that the repeated references to these statements, and the unwarranted use of portions thereof implicating Lombard, by the District Attorney in summation, as well as other unfair comments made by him, were so prejudicial as to require a reversal and a new trial.

When the time arrived at the trial for summations, the case against De Gennaro was virtually an inquest. Since he had taken the stand and admitted his participation in the holdup, the assistant district attorney had little to argue as to him.

However, with Lombard there were a number of actively contested issues including identification, alibi and flight. With De Gennaro's testimonial confession of guilt before the jury,

---

* Justice BASTOW and I agree that feasible means should have been adopted to redact De Gennaro's confession and admissions — before their introduction into evidence — so as to restrict their contents to his own inculpations, and thus have avoided any possible prejudice to Lombard.

there was no need in the prosecutor's summation to refer to the nonjudicial confession or admissions, unless the purpose was to circumvent the restrictive character of those statements insofar as they applied to Lombard. Yet a reading of the summation discloses repeated references to De Gennaro's non-testimonial statements. But not content with this, the assistant district attorney went further, and made specific references to those statements of De Gennaro which implicated Lombard.

At one point the prosecutor, unquestionably referring to those statements, declared: " De Gennaro said that Lombard was with him." At another juncture in the summation, he remarked: " and most certainly on the date of July 20, when De Gennaro was asked did he have a car with him at that time, he [the inquiring assistant district attorney] was refer-ring to his meeting with Lombard at 125th Street. Yes, he had a Nash. What year Nash is it? He said either a '50 or '51. The same De Gennaro who said it was a 9 Q or 8 Q license plate and Mrs. McCormack told us here what year her license plate was 9Q and a Nash." In juxtaposition with De Gennaro's con-fession,* this comment was most improper.

Again further reference to the July 20 confession was made by the assistant district attorney (to which defendant's counsel objected) when he told the jury: " On July 20, 1955, when De Gennaro was talking with the police, if Lombard was not the man who was with him, if, as they would have us believe now, Lombard would have you believe, was no contact with Lombard for a period of three years. How did De Gennaro know that Lombard lived in College Point? How did De Gennaro know that Lombard drove McCormack's Nash automobile? How was De Gennaro able to give to the police on July 20 before McCor-mack or Lombard came into the picture, that the automobile had an 8Q or 9Q license plate, and it developed that—".

All of these allusions vitiated the restrictions under which the confession and admissions were permitted to be introduced in evidence, namely, that they were not to be received as evidence against Lombard. The picture presented is not just of an isolated improper reference to the circumscribed evidence, but of a series of such allusions whereby the jury was exhorted

---

* De Gennaro's statement to the District Attorney: " Q You say you arrived in the Bronx last evening; is that correct? A Last night. Q Last Night? A Yes. Q Did Lombard meet you at the station at 125th Street and Park Avenue? A Yes. Q Did he have the car with him at that time? A Yes. He had a Nash. * * * Q What year Nash is it? A Either a 1950 or 1951 "

Lombard's niece, an alibi witness in the case, owned a Nash automobile.

to consider the hearsay in violation of Lombard's substantial rights. Difficult as it is for juries to heed the instructions of the court in a multiple defendant trial — as to the binding effect of evidence on different defendants — the task becomes legally impossible if the prosecutor disregards the restrictions, and unfairly injects arguments in his summation which transfer the limited admissions across the barrier of their exclusion as to the nondeclaring defendant. We cannot minimize the damaging effect of these improper references which unquestionably rendered ineffectual the admonition of the court that De Gennaro's confession and admissions were not to be considered against Lombard.

The contagious momentum of the prosecutor's misuse of De Gennaro's confession carried the vice directly into the court's charge. For the court, in reviewing the testimony, referred to the fact that De Gennaro " was questioned by the District Attorney and said he got the gun from Lombard " and that De Gennaro had received a telephone call from Lombard in Schenectady. While on application of defense counsel, this was corrected, we cannot say that no harm came to Lombard as a result thereof.

Palpably, therefore, the prosecutor's summation was highly prejudicial to Lombard. The summation cannot be considered within the bounds of proper advocacy. The District Attorney is an advocate, but, at the same time, he is a quasi-judicial official (*People* v. *Fielding,* 158 N. Y. 542) and his primary duty is to see that justice is done and the rights of all — defendants included — are safeguarded. There is a positive obligation on his part to see that a trial is fairly conducted (*Berger* v. *United States,* 295 U. S. 78). He should be as zealous in protecting the record against reversible error as he is to present his case as forcefully as possible. While allowed the widest latitude by way of comment, denunciation or appeal in advocating his cause, this does not give him any warrant to introduce into his summation matter which the jury has no right to consider in determining the guilt or innocence of the defendant (*People* v. *Fielding, supra,* p. 555). (Generally, see 32 N. Y. U. Law Rev. 607; 54 Col. L. Rev. 946.)

We do not discuss the other assignments of error in this case because a new trial must be had on the basis of the improper summation. The language in *People* v. *Carborano* (301 N. Y. 39) aptly epitomizes our conclusion herein. Judge Fuld there said (p. 43): " The decision in each case as to whether the trial was fair or unfair, whether the error was harmless or prejudicial, must of necessity depend upon the

nature of the proof adduced and upon the type of error committed. In the present case, while the court may have corrected some of the improprieties, neither its instructions nor its admonitions could possibly have cured the prejudice resulting from their commission."

The judgment should be reversed and a new trial ordered.

PECK, P. J., BREITEL, FRANK and BASTOW, JJ., concur.

Judgment appealed from unanimously reversed upon the law, and a new trial ordered.