Scileppi, J.
On Saturday evening, December 4, 1965, two carloads of people were riding aimlessly about the streets of Rochester, New York. One of the cars, driven by Cleveland Chatman (the deceased), contained two other men and three women. A billy club, similar to a police night stick, was under the front seat of the car. During the evening, stops were made for beer and whiskey and everyone except one woman had been drinking.
Riding in the other car, driven by W. Nathan, were five men, including the defendant Adams and his codefendant at the trial, Robert Love. All of them had been drinking throughout the evening. Just prior to the homicide, Adams was seated in the middle of the front seat. Early in the evening, R. Washington, *400 another passenger in the vehicle, picked up a single-loading, sawed-off .22 rifle and a handful of shells and put them in the car.
At about 11:00 p.m. the Nathan car passed the Chatman car and, in pulling back into the right lane, cut off the Chatman car causing it to turn to the right and slow down to avoid a near accident. Both cars stopped at a corner and some words were exchanged. W. Nathan apologized for the driving incident and pulled away from the corner. The Chatman car followed.
At the intersection of Plymouth Avenue South and Magnolia Street, the Nathan car stopped for a red light. The Chatman car came alongside and parked at the curb in front of a grocery store at the northwest corner of Plymouth Avenue South and Magnolia Street. When the light turned green, the Nathan car proceeded through the intersection and then parked in front of the gas station on the southwest corner of Plymouth Avenue South and Magnolia Street.
Cleveland Chatman and his brother got out of the car and walked toward the grocery store. Three or four of the five men in the Nathan car, including W. Nathan and the defendant Adams, also got out of the car and walked toward the grocery store. Under his coat, Adams had concealed the rifle.
After arguing briefly, Willie Nathan and Cleveland Chatman started fighting. At this time, the defendant was standing by the corner of the grocery store, allegedly in a state of intoxication. Robert Love attempted to help Nathan but was quickly repulsed by B. Chatman.
The Chatman brothers then proceeded to pummel W. Nathan. In an attempt to aid Nathan, the defendant threatened to shoot and then fired one shot from the rifle. The bullet missed its mark and the two Chatmans ran behind the deceased’s car.
The deceased seized the billy club from the car and came toward the defendant.
When the deceased reached the sidewalk, the defendant pointed the gun at him and said, “Yes, you the one I want.” The deceased said, “ There’s no need of any shooting, man. Put it down. I want to talk to you. You weren’t even driving ”. According to three witnesses, the defendant then said, “ You the mother f_____I want ” held up the gun and shot him.
*401 The deceased was taken to Strong Memorial Hospital where he died from loss of blood resulting from the gunshot wound.
A two count indictment was lodged against Adams charging him with murder in the second degree and assault in the first degree. Robert Love was indicted for murder in the second degree on the theory that he had given the death bullet to Adams just before the killing.
A Huntley hearing was held to test the voluntariness of certain statements made by each of the defendants. Although on this occasion counsel had an opportunity to discover the prejudicial references in each statement, no motion for a separate trial was made and the defendants, therefore, were tried jointly. The jury acquitted Love and found Adams guilty on both counts in the indictment.
On appeal, the Appellate Division unanimously affirmed without opinion; the defendant appeals to this court pursuant to permission granted by Judge Van Voorhis.
At the trial, the prosecutor introduced into evidence the unredacted pretrial statement of codefendant Robert Love, which contained both inculpatory and exculpatory remarks. Concededly, portions of this statement referring to Adams were technically inadmissible against him (People v. Ryan, 263 N. Y. 298, 305) and were highly prejudicial. These prejudicial portions, however, were so interrelated with Love’s exculpatory statements that redaction would probably have resulted in prejudice to Love (see People v. La Belle, 18 N Y 2d 405). The Trial Judge admitted the statement into evidence and instructed the jury, although not too forcefully, to consider the statement only against Love and not against Adams. In his charge, he again instructed the jury to consider the statement only against Love.
Notwithstanding the court’s charge and prior instruction, we are convinced that Adams was denied the fundamentals of a fair trial and, therefore, reversal is mandated. During his summation to the jury, the District Attorney, despite the Judge’s instructions, urged them to accept Love’s statement as evidence against Adams. While it cannot be said, as it was in People v. Lombard (4 A D 2d 666), that the District Attorney exhorted the jury to consider the inadmissible evidence, we think that the District Attorney’s remarks vitiated whatever protection the Judge’s instructions afforded the defendant. Under the circum *402 stances of this case, it is unreasonable to assume that the jury could follow the court’s instructions.
The observation of the court in the Lombard case is particularly applicable here: ‘‘ The District Attorney is an advocate, but, at the same time, he is a quasi-judicial official (People v. Fielding, 158 N. Y. 542) and his primary duty is to see that justice is done and the rights of all — defendants included — are safeguarded. There is a positive obligation on his part to see that a trial is fairly conducted (Berger v. United States, 295 U. S. 78). He should be as zealous in protecting the record against reversible error as he is to present his case as forcefully as possible. While allowed the widest latitude by way of comment, denunciation or appeal in advocating his cause, this does not give him any warrant to introduce into summation matter which the jury has no right to consider in determining the guilt or innocence of the defendant ” (People v. Lombard, supra, p. 671),
Although the evidence in the record is sufficient to support the conviction, this court, as well as others, has refused ‘‘ to announce a doctrine that the fundamentals of a fair trial need not be respected if there is proof in the record to persuade us of defendant’s guilt” (People v. Mleczko, 298 N. Y. 153, 163; see, also, People v. Steinhardt, 9 N Y 2d 267; People v. Jackson, 7 N Y 2d 142; People v. Marks, 6 N Y 2d 67; People v. Ochs, 3 N Y 2d 54; People v. Lovello, 1 N Y 2d 436; People v. Savvides, 1 N Y 2d 554; People v. Castelo, 24 A D 2d 827; People v. Driscoll, 20 A D 2d 880; People v. Copeland, 12 A D 2d 942; People v. Lombard, supra).
While the prejudicial remarks in the District Attorney’s summation may have been made unintentionally in the heat of advocacy, the fact remains that Adams was deprived of a fair trial.
Adams also urges three errors in respect to the court’s charge; that the charge to the jury on justifiable homicide by reason of resistance to the perpetration of a felony was so inadequate as to constitute reversible error; that the record presents an issue of lawful force within subdivision 3 of section 246 of the former Penal Law and the charge lacks any instruction on this fundamental issue; that the charge to the jury on intoxication—a question associated with the main issue of self-defense and intent *403 or lack of intent to kill—was so inadequate as to constitute reversible error.
No exception or objection was taken to the charge and no request was made to charge differently. Thus, any question relating to error in the charge is not available on this appeal (Code Crim. Pro., § 420-a; People v. Feld, 305 N. Y. 322, 332).
In conclusion, we are of the opinion that the prejudicial remarks in the District Attorney’s summation denied Adams of his right to a fair trial and, therefore, in the interest of justice a new trial should be ordered.
Accordingly, the judgment appealed from should be reversed and a new trial ordered.
Chief Judge Fuld and Judges Burke, Bergan, Keating, Breitel and Jasen concur.
Judgment reversed, etc.