(February 22, 1990)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARK T. CARTER, Appellant.—Yesawich, Jr., J.

In the early evening of September 13, 1984, Mary Ann Maebus, age 65, was on her way to church when she was accosted by two black youths. Her pocketbook was cut from her arm, and she was punched in the chest and knocked to the ground. When Maebus screamed for help and that her pocketbook had been stolen, the youths immediately fled from the scene on foot. Edward Brown, an area resident who was nearby, heard Maebus' call for aid and saw two black males, who were approximately 5 feet, 8 inches to 5 feet, 10 inches tall and wearing dark pants or blue jeans, running down the middle of the street away from the elderly woman. Brown pursued the two individuals in his car for approximately four minutes, during which time he lost sight of them for several minutes, but then spotted them again, and resumed the pursuit on foot.

Upon being apprehended by Brown and in response to Brown's questioning, defendant stated that he did not have the purse but knew where it was hidden. When defendant's attempts to locate the purse proved futile, Brown brought defendant back to the scene of the crime. There he turned defendant over to waiting police officers. A police officer then escorted defendant to Maebus and asked her if she recognized him. Maebus ignored the question and instead immediately demanded of defendant that he return her pocketbook.

Defendant, who was 17 years of age at the time, was arrested and read his *Miranda* warnings, after which he volunteered to return the pocketbook in exchange for his release. At trial, defendant attempted to establish that he was mistakenly identified. The jury convicted him on both counts of robbery in the second degree, class C felonies (see, Penal Law § 160.10 [1], [2] [a]). Defendant, who had no prior criminal record, was sentenced to two concurrent prison terms of 3⅓ to 10 years. His principal arguments on appeal are that he was not afforded effective assistance of counsel, that the People's

identification evidence was insufficient to support the verdict, that the jury charge was inadequate and that County Court abused its discretion when it refused to sentence him as a youthful offender. Being unpersuaded, we affirm.

Errors and omissions chargeable to defendant's trial counsel did occur during the course of the trial, but defendant was not prejudiced thereby. Defense counsel's failure to make any pretrial motions or to request youthful offender status was not a cataclysmic dereliction inasmuch as County Court *sua sponte* afforded defendant *Wade* and *Huntley* suppression hearings and considered whether defendant should be granted youthful offender status. Nor was the failure of defense counsel to insist that the People produce Maebus at the *Wade* hearing prejudicial, for defendant was brought back to the scene by Brown, a good samaritan bystander, at which time Maebus identified defendant; there was no suggestive police action *(see, People v James,* 138 AD2d 744, 745, *lv denied* 72 NY2d 861; *People v Jackson,* 108 AD2d 757).* Moreover, the record discloses that although defense counsel purportedly was not prepared to go to trial, he cross-examined Brown and the other prosecution witnesses at considerable length and creditably attempted to discredit their identification of defendant. Counsel also made relevant closing and sentencing statements interspersed with a motion to set aside the verdict. Furthermore, Maebus' and Brown's identification of defendant shortly after the robbery and in court and defendant's flight from the scene, combined with his inculpatory statements, provide overwhelming evidence of his guilt. The result of the trial would have been no different had even more meaningful representation been furnished.

Despite defendant's contention to the contrary, County Court correctly permitted Maebus to identify defendant in court. Maebus testified that she observed the robbers as they approached her and that it was daylight at the time. She again had an opportunity to view defendant during the robbery itself and when he and his companion fled. She accurately described defendant's shirt to the arresting officer as striped. Plainly, under the " 'totality of the circumstances' " *(Manson v Brathwaite,* 432 US 98, 104; *accord, Stovall v Denno,* 388 US 293, 302), Maebus' in-court identification of defendant had a reliable independent basis *(see, People v Ramos,* 42 NY2d 834, 835).

In our view, the People's identification evidence was of sufficient weight to support the jury's verdict *(see generally,*

*People v Bleakley,* 69 NY2d 490, 495). At trial, two witnesses, the victim and the pursuing bystander, independently identified defendant as one of the robbers. Also noteworthy is Maebus' demand for the return of her purse from defendant at the showup immediately after the crime; this further proves defendant was the thief.

With regard to the adequacy of County Court's identification charge to the jury and the assertion that the court failed to marshal all the evidence, no objection or exception was registered and, hence these issues were not preserved for review *(see, People v Nuccie,* 57 NY2d 818, 819-820). In any event, we find the court's identification instructions, though not fulsome, satisfactory. The court specifically charged the jury that identification of defendant was "a main issue" in the case, and then admonished the jury that they should "examine with great care all the evidence on the issue of identity and * * * be convinced beyond a reasonable doubt that the defendant is the * * * man who, in fact, committed the crime; otherwise you must acquit him" *(see,* 1 CJI[NY] 10.01, at 580-589). As for marshaling the evidence, that is not required when, as here, the trial was relatively short, the jury was adequately apprised of defendant's defense, and the charge, taken in its entirety, was unquestionably fair to defendant *(see, People v Patterson,* 121 AD2d 406; *People v Harris,* 69 AD2d 843).

Regarding County Court's refusal to grant youthful offender status, defendant claims that the court, contrary to *Cruickshank's* directive *(see, People v Cruickshank,* 105 AD2d 325, 334, *affd* 67 NY2d 625), ignored relevant mitigating factors, made no findings regarding defendant's prospects for rehabilitation or attitude toward society and the law, did not consider his reputation for peacefulness in the community and disregarded the Probation Department's recommendation that defendant serve no more than six months' incarceration. This contention is unconvincing. Information bearing on these matters is contained in the presentence report which County Court proclaimed it reviewed in detail before it denied defendant youthful offender status. That being the case and because the decision to grant youthful offender status lies within the sentencing court's sound discretion (CPL 720.20 [1]), we cannot say the court abused its discretion in this case. Lastly, as County Court observed at sentencing, given the extremely serious nature of the crime, the manner in which it was committed and the fact that the permissible maximum sentence defendant could have received was 5 to 15 years *(see,* Penal Law § 70.00 [2], [3] [b]), we perceive no reason to alter

the sentence imposed. Defendant's remaining contentions are without merit.

Judgment affirmed. Mahoney, P. J., Kane, Mikoll, Yesawich, Jr., and Mercure, JJ., concur.