■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARL F. FERGUSON, Appellant. [594 NYS2d 860] —Yesawich Jr., J. P. Appeal from a judgment of the County Court of Scho-

harie County (Lamont, J.), rendered November 8, 1989, upon a verdict convicting defendant of the crime of murder in the second degree.

As a result of the fatal shooting of a seven-year-old boy, defendant was charged with murder in the second degree, manslaughter in the first and second degrees, criminally negligent homicide, assault in the first degree and two counts of criminal use of a firearm in the first degree. At trial, the defense did not dispute that defendant shot the boy, but attempted instead to prove that due to a mental disease or defect defendant lacked the capacity to know or appreciate the nature and consequences of his conduct, and that he did not know or have reason to know that the gun was loaded. Convicted of murder in the second degree and sentenced to an indeterminate term of incarceration of 20 years to life, defendant appeals. His principal argument on appeal is that certain remarks made by the prosecutor during summation deprived him of a fair trial. We agree with this assessment.

In his summation, the prosecutor indicated that should defendant be found not guilty by reason of mental disease or defect, he "might be out in 90 days, 180 days". The prosecutor then asked the jurors to contemplate whether they would be able to "sleep safe and secure" knowing this. These statements, even if said in the heat of advocacy, went beyond a proper response to defense counsel's suggestion, made to the jury, that defendant needed help rather than punishment *(compare, People v Reade,* 1 NY2d 459). The remarks were calculated to focus the jurors' attention on the possibility that this particularly sad and pointless incident might be repeated if all the jurors accomplished by their verdict was to label the defendant "insane" and allow him to escape punishment with a "slap on the wrist". In view of the increasingly held belief that the defense of "insanity" is merely a technicality that allows the guilty to avoid punishment for their wrongdoing and the rising fear of violent crime that pervades virtually all communities, it cannot be said with any assurance that this statement, once made, could be easily banished from the jurors' thoughts *(see, People v Levan,* 295 NY 26, 36; *People v Manganaro,* 218 NY 9, 17).

Although in many instances a prompt and specific curative instruction suffices to alleviate the harm done by an improper statement *(see, People v Broady,* 5 NY2d 500, 516, *appeal dismissed and cert denied* 361 US 8; *People v Stockwell,* 184 AD2d 800, *lv denied* 80 NY2d 934; *People v Miller,* 108 AD2d

1053, 1057, *lv denied* 65 NY2d 697), such an instruction, to be adequate to its purpose, must "eradicate [the] unjust effects" of the statement *(People v Manganaro, supra,* at 17). Here, no curative instruction was given until two hours later, in the course of a lengthy charge, and then the jury was directed only to pay no heed to comments made by counsel regarding the possible consequences of a particular verdict. Significantly, the prosecutor's suggestion was never specifically refuted. Under these circumstances, it is unlikely that the jury would have put out of its collective mind the fear and apprehension engendered by the prosecutor's statement. In short, we believe "it is unreasonable to assume that the jury could follow the court's instructions" *(People v Adams,* 21 NY2d 397, 402; *see, People v Levan, supra,* at 36) to disregard counsel's statements respecting whether defendant would be "locked up or let go * * * [given] a hearing * * * and so forth".

Finally, inasmuch as there was significant evidence tending to shed doubt on the ability of defendant, who had suffered brain damage as the result of an aneurysm several years prior to the incident, to comprehend the risk involved in his actions, we cannot say that the evidence of guilt was sufficiently overwhelming to render the prosecutor's comments harmless *(see, People v Mleczko,* 298 NY 153, 162; *compare, People v Patterson,* 83 AD2d 691, 692).

Although defendant's contentions that the jury charge was defective were not preserved for appellate review, given that a new trial must be had it serves the interest of judicial economy to address these arguments at this time. We find no merit to the claim that the jury was not properly instructed as to the degree of risk that defendant must be found to have disregarded before he could be convicted of "depraved indifference" murder under Penal Law § 125.25 (2). The recommended jury instruction *(see,* 2 CJI[NY] PL 125.25 [2], at 217), which was given, clearly and correctly defines the elements of the crime, including the mental state and the attendant circumstances required. Defendant is correct, however, in his assertion that because there was evidence presented from which the jury could have concluded that he was unable to form the requisite mens rea for the crime charged, he would have been entitled to a jury instruction on this point had one been requested *(cf., People v Segal,* 54 NY2d 58, 66).

The remaining issues raised by defendant have been considered and found to be without merit.

Crew III, Mahoney and Harvey, JJ., concur. Ordered that

the judgment is reversed, on the law, and matter remitted to the County Court of Schoharie County for a new trial.