[598 NYS2d 832]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent v ERNEST G. CULVER, Appellant.

Third Department, June 10, 1993

12

## APPEARANCES OF COUNSEL

*Francis A. Discenza,* Cortland, for appellant.

*Richard J. Shay, District Attorney* of Cortland County, for respondent.

## OPINION OF THE COURT

WEISS, P. J.

In a three-count indictment defendant was accused of (1) murder in the second degree by evincing a depraved indifference to human life, (2) murder in the second degree in the furtherance of the crime of robbery, and (3) robbery in the first degree by forcibly stealing currency and in the course of which he stabbed the victim with a deadly weapon. The facts show that on March 22, 1991, defendant and his brother Ramos Culver walked into the Cortland County Sheriff's office and told Deputy Sheriff Albert Stephens they wanted to talk to an officer about "[a] dead body at 20 Union Street". Culver stated that on March 19, 1991, he and defendant had been staying with the victim in his apartment and that Culver fell asleep after becoming inebriated; he was awakened by defendant who said that the victim had "made sexual advances toward him, told him he was cute, and wanted to have sex with him". Defendant then interrupted Culver's recitation and said "I had to use a knife" and "I lost it, I had to use a knife". At that point Stephens read *Miranda* warnings to defendant and Culver and called the City of Cortland police. Sergeant Richard McMullin arrived and spoke to defendant and Culver and, without making an arrest, asked them to accompany him to the police department to continue the discussion. Prior to a consensual pat-down, defendant gave McMullin a pocketknife and when asked if that particular knife had been used in the incident, defendant responded, "No, that's my knife. I didn't use that."

Three police officers then went to 20 Union Street where they found the victim's body in apartment No. 6. The victim lay dead on a couch and one of the officers testified that he observed nothing to indicate that a struggle had occurred. The lights were on, the television was playing, several knives were

scattered around the room and the victim's open (but empty) wallet was lying near his body. The report of an autopsy performed by Humphrey Germaniuk, a Medical Examiner, showed that knives were lodged in the victim's right shoulder, his chest and his right nipple and that 19 separate knife wounds had been inflicted. The cause of death was determined to be multiple stab wounds. The jury found defendant guilty of murder in the second degree for killing the victim with a depraved indifference to human life (Penal Law § 125.25 [2]). On this appeal, defendant has asserted 19 separate arguments for reversal, not all of which require extended discussion by this Court.

█ Initially, we reject the argument that the verdict was not supported by sufficient evidence and that it was against the weight of the evidence. We have been instructed that when both the legal sufficiency and the weight of trial evidence have been challenged, each requires a discrete analysis *(People v Bleakley,* 69 NY2d 490, 495). As to the former, our examination of the record satisfies us that the verdict was amply supported by sufficient evidence of defendant's guilt. Inasmuch as the jury found that he acted with a depraved indifference to human life by recklessly engaging in conduct which created a grave risk of death and did thereby cause the victim's death (Penal Law § 125.25 [2]), we now view the evidence in a light most favorable to the People in our objective assessment of defendant's conduct *(see, People v Roe,* 74 NY2d 20, 24) and ascertain whether such conduct was imminently dangerous and posed a very high risk of death to the victim *(see, People v Longo,* 182 AD2d 1019, 1020, *lv denied* 80 NY2d 906).

The testimony of witnesses showed that both brothers had been drinking heavily with the victim and possessed considerable cash after the time of the alleged attack. Defendant and Culver went on a free-spending spree, presumably using the proceeds of the victim's recently cashed Social Security check. Defendant indicated to William Fellows that "he had hurt someone pretty badly" and gave the victim's ring to Fellows. The inculpatory statements made to the police, supported by testimony from the Medical Examiner describing the three knives found imbedded in the victim's body, and the multitude of wounds inflicted, combine to provide evidence sufficient to support the jury verdict. We find existing a valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the

basis of the evidence at trial *(see, People v Bleakley, supra,* at 495). We also find, as a matter of law, that the weight of the evidence adduced at trial was inconsistent with defendant's hypothesis of innocence and satisfied the prosecution's burden of proof requirements for every element of the crime charged and upon which defendant was found guilty *(see, supra; People v Loliscio,* 187 AD2d 172).

█ Having thus found, we now reject defendant's contention that the indictment lacked explanation sufficient to apprise him of the nature of the accusation against him. The validity of the order denying his omnibus motion to dismiss the indictment on the ground of noncompliance with CPL 200.50 is not reviewable upon appeal from the ensuing judgment of conviction which is based on legally sufficient evidence (CPL 210.30 [6]; *People v Bey,* 179 AD2d 905, 906-907, *lv denied* 79 NY2d 918, 1046). Moreover, we find the indictment sufficiently apprised defendant of "where, when and what the defendant did" *(People v Laporte,* 184 AD2d 803, 804, *lv denied* 80 NY2d 905). Equally unavailing are defendant's contentions that he had been wrongfully denied a bill of particulars which, if ordered, would necessarily have provided the evidence which the prosecution needed to prove the elements of the crime *(see,* CPL 200.95 [1] [a]; Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 200.95, at 539). Similarly unpersuasive is the contention of the inadequacy of the prosecution's opening statement, which we find provided the jury with the nature of the charges to be tried and enabled them to intelligently understand the case *(see, People v Kurtz,* 51 NY2d 380, 384, *cert denied* 451 US 911; *People v Chamberlain,* 178 AD2d 783, 784, *lv denied* 79 NY2d 945).

█ We next consider whether County Court erred by reversing its previous ruling suppressing defendant's statement made to McMullin ("No, that's my knife. I didn't use that") and held that good cause had been shown (CPL 710.30 [2]) for the failure by the People to have given timely notice of its intent to offer the statement (CPL 710.30 [1]). Concededly, the notice was not given within 15 days of the arraignment and absent a demonstration of good cause for the delay, the statement would therefore be inadmissible against defendant at trial (CPL 710.30 [1], [2]; *People v Amparo,* 73 NY2d 728, 729). Neither of the two exceptions to inadmissibility (good cause for delay *[see, People v Sian,* 167 AD2d 435, 435-436] or an unsuccessful suppression motion made despite the lack of timely notice *[see, People v Mullins,* 179 AD2d 48, 53-54, *lv*

*denied* 80 NY2d 835]) are present in this case. However, because the error was not of constitutional dimension and we have already found the proof of guilt to be overwhelming, the error is harmless inasmuch as there is no significant probability that the jury would have acquitted defendant in the absence of the statement *(see, People v Crimmins,* 36 NY2d 230, 242; *People v Willsey,* 148 AD2d 764, 767, *lv denied* 74 NY2d 749).

■ We find no error in the rejection of testimony to prove that the victim had been charged with sodomy in the first degree (Penal Law § 130.50) in the Town of Junius Justice Court on September 12, 1978, pleaded guilty to sexual abuse in the second degree and was sentenced to one year in jail. County Court refused to admit testimony from Cecelia Weitzel, who had testified in a Family Court proceeding brought against the victim for abuse of his six-year-old daughter. We find that County Court properly determined that the prior conviction involving a child was both remote and distinguishable from the instant charges involving a 28-year-old man and that its exclusion did not interfere with defendant's right to establish his defense *(see,* CPL 60.43; Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 60.43, at 15; *see also, Michigan v Lucas,* 500 US 145).

■■ The apex of defendant's arguments is focused upon the charge to the jury which he contends involved errors depriving him of a fair trial. We have carefully considered each contention and find them unavailing. Briefly stated, defendant attacks the use of pattern jury charges found in the Criminal Jury Instructions-New York text as being boiler plate, inanimate, and abstract. We disagree. This Court has recently held that the pattern instruction for "depraved indifference" and the "reckless element of the crime" (2 CJI[NY], PL 125.25 [2], at 217) are adequate to apprise a jury of the requisite elements of the crime and under what circumstances the crime has been committed *(see, People v Ferguson,* 191 AD2d 809, 811). We find no reason to depart from that determination in this case. Similarly unpersuasive is the contention that the failure to have marshaled the evidence was error. This was a very brief trial lasting less than two days and the facts were neither intricate nor complicated. The events taken together with the testimony of the police officers and the Medical Examiner were straightforward and did not mandate that the

evidence be marshaled by County Court *(see, People v Carter,* 158 AD2d 851, 853).

■ Nor was it error to refuse to instruct the jury on the principles of solely circumstantial evidence inasmuch as both direct and circumstantial evidence had been adduced. The direct evidence included testimony from three witnesses who recounted defendant's statements uttered either by him, or attributed to him by his brother in his presence, which he is deemed to have admitted by his silence *(see, People v Hoover,* 162 AD2d 710, 712, *lv denied* 76 NY2d 987; *People v Benanti,* 158 AD2d 698, 699, *lv denied* 76 NY2d 731, 784). The dead body was found by the police just as defendant had described, along with several other knives covered with blood. The other evidence included testimony from the Medical Examiner and his autopsy report describing the multiple stab wounds which included reentry wounds in previous stabs, and the cause of death, all of which constituted extremely probative circumstantial evidence of defendant's recklessness and depravity. This Court has repeatedly held that a defendant's statements are direct evidence of a crime, thereby justifying that the combined circumstantial and direct evidence charge be given *(see, People v Hill,* 188 AD2d 949; *People v Holden,* 188 AD2d 757; *People v Heidorf,* 186 AD2d 915).

■ ■ We find lacking any reasonable interpretation of the evidence which would support a defense of justification (Penal Law § 35.15 [2] [b]). There was nothing from which to infer that the victim was about to use deadly force against defendant or even that he had wielded any weapon or force, making the refusal to give the justification defense proper *(see, People v Reese,* 167 AD2d 761, 762, *lv denied* 77 NY2d 881). We find the remainder of defendant's arguments pertaining to the charge equally unpersuasive and not requiring extensive explanation. We reject the contention that he was entitled to a missing witness charge because the prosecutor failed to produce Culver to testify at the trial. Although Culver had testified before the Grand Jury and was under subpoena by the prosecution for the trial, the fact remains that he too remained a suspect and that the People refused to immunize him. Nor had it been established that he would testify in favor of the prosecution *(see, People v Kitching,* 78 NY2d 532, 536-537; *People v Gonzalez,* 68 NY2d 424, 427-428). After he was released from the subpoena, Culver conferred with defense

counsel. There was no evidence of any arrangement between Culver and the prosecution which would indicate that he was predisposed to testify against his brother, and therefore County Court did not err in believing that he was not under the control of the prosecution and in its refusal to give the missing witness charge to the jury *(see, People v Huhn,* 140 AD2d 760, 761, *lv denied* 72 NY2d 919).

MIKOLL, YESAWICH JR., LEVINE and MERCURE, JJ., concur.

Ordered that the judgment is affirmed.