■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERNEST W. VANN, Appellant. [627 NYS2d 473] —Mikoll, J. P. Appeals (1) from a judgment of the County Court of Tompkins County (Friedlander, J.), rendered December 20, 1991, upon a verdict convicting defendant of the crime of murder in the second degree, and (2) by permission, from an order of said court, entered December 3, 1993, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

At about 12:30 P.M. on February 19, 1990, the lifeless body of Ellen Newhart was discovered on Bald Hill Road in the Town of Danby, Tompkins County. Medical evidence established that Newhart's head had been beaten "to a pulp". Investigation by the County Sheriff's Department indicated that Newhart had been last seen in the company of defendant at Union Hall Tavern the previous evening. Sheriff's investigators contacted defendant at his residence and he voluntarily agreed to accompany them back to the Sheriff's Department, where he was given *Miranda* warnings and signed a written waiver of rights form.

In oral and written statements given to investigators, defendant explained that although he had been with Newhart at a party that evening, he loaned his truck to Don Harding who

left the party with Newhart. Defendant also related that he waited for hours at a doughnut shop and a gas station for Harding to return. Defendant consented in writing to a search of his truck for evidence. Initial inspection of his truck at his residence revealed what appeared to be blood spots on the passenger door, in the cab and on a shirt located in the bed of the truck. Following defendant's acknowledgment that the shirt was his, it was seized. Subsequently, the truck was towed to the Sheriff's Department for safekeeping.

Additional investigation revealed that contrary to defendant's claims, he had not been present at the gas station or doughnut shop as he alleged. Further, Harding denied that he had any involvement with defendant or Newhart as defendant had claimed. A search of Harding's room revealed no evidence of the crime.

An accusatory instrument was filed in the Danby Justice Court on February 21, 1990 charging defendant with the murder of Newhart. The same day, defendant was stopped in Virginia for hitchhiking and placed under arrest by Virginia police pursuant to a New York fugitive warrant. Defendant was given his *Miranda* warnings and again gave police written statements.

Subsequently, defendant was charged by indictment with committing murder in the second degree in two counts (Penal Law § 125.25 [1], [2]). After a suppression hearing, County Court held that the shirt and physical evidence found on and in the truck, plus defendant's oral and written statements, were admissible at trial. Following a *Frye* hearing, County Court held that results of DNA analysis of human blood samples sent to the Federal Bureau of Investigation (hereinafter FBI) laboratories for comparison with blood samples taken from Newhart and defendant would also be admissible at trial.

Following his trial before a jury, defendant was found guilty of murder in the second degree (depraved indifference murder). Defendant's CPL 330.30 motion to set aside the verdict was denied and he was sentenced to prison for a term of 25 years to life. Defendant thereafter unsuccessfully moved pursuant to CPL 440.10 to vacate the conviction. Defendant appeals from his conviction and from County Court's denial of his CPL 440.10 motion.

Defendant raises several claims of reversible error through counsel and *pro se* in his direct appeal from the trial and, also, from the denial of his postconviction CPL 440.10 motion. We have considered these claims and find them to be without merit for reasons hereafter stated.

Defendant's arguments that there was insufficient legal evidence to sustain his conviction and that the guilty verdict was against the weight of the evidence are without merit. Viewing the evidence in the light most favorable to the People, as we must (*see, People v Roe*, 74 NY2d 20, 22), we find that the verdict is clearly supported by legally sufficient evidence (*see, People v Culver*, 192 AD2d 10, 14-15, *lv denied* 82 NY2d 716).

Prosecution witnesses testified that defendant and Newhart had left the party alone together. Newhart's blood was found on the flannel shirt he was wearing that night. Evidence established that defendant's alibi was false, that he falsely implicated Harding and that he fled the State following investigative questioning. Additionally, defendant took the stand in his own behalf and admitted that his initial statements to authorities were untrue. He also admitted to being at the scene of the murder that night. However, he claimed at trial that he had been drinking and had taken "acid" that evening. He further claimed that an unidentified hitchhiker he picked up had attacked Newhart. Defendant further testified that he could not have committed the crime because he "wasn't covered with blood when [he] left the scene". Defendant also asserted that if he was the perpetrator, it was because he was under the influence of LSD. Thus, strong direct and circumstantial evidence, including the blood analysis, was legally sufficient to establish defendant's guilt and the verdict was not against the weight of the evidence. The jury could properly conclude that defendant acted with a depraved indifference to human life by recklessly engaging in conduct that created a grave risk of death and, in fact, caused Newhart's death (*see, People v Culver, supra*).

Defendant's claim that County Court erred in denying his motion to dismiss the indictment for legally insufficient evidence before the Grand Jury is rejected. Defendant cannot raise this issue on appeal from a judgment of conviction which was based on legally sufficient evidence (*see, People v Totman*, 208 AD2d 970; *People v Culver, supra*, at 15).

Defendant's contention that County Court erred in denying his motion to suppress certain oral and written statements and physical items seized from his truck is also without merit. Defendant's claim that such evidence was inadmissible because he was illegally arrested at his home without a warrant is not reviewable on appeal because of defendant's failure to raise the issue in County Court. In any event, defendant voluntarily accompanied investigators to the Sheriff's Department for questioning (*see, People v Jones*, 130 AD2d 511; *see also, People*

v Tasker, 166 AD2d 753, lv denied 77 NY2d 844). Moreover, the items seized from defendant's truck were legally obtained in a search conducted with defendant's consent (see, People v LaDuke, 206 AD2d 859, 860; see also, People v Rivera, 206 AD2d 832, lv denied 84 NY2d 871) and the blood-stained shirt was in plain view (see, People v Esposito, 191 AD2d 746, lv denied 81 NY2d 885).

We reject defendant's assertion that the DNA profiling results were inadmissible because the FBI fixed-bin procedures for obtaining statistical calculations were flawed. Defendant's challenge to the FBI's methodology goes to the weight to be accorded to the test results and not to their admissibility. Objections to the statistical calculations and the specific analysis used should have been raised when the People introduced the results at trial (see, People v Wesley, 83 NY2d 417, 424, 427-429).

Defendant's argument that he was deprived of a fair trial because he was denied adequate funds to hire expert witnesses is without merit. Defendant has not shown that County Court abused its discretion in this regard (see, People v Lane, 195 AD2d 876, 878, lv denied 82 NY2d 850). In fact, County Court granted defendant up to $1,550 for DNA expert consultation, with leave to seek additional funding. Further funds were provided for other purposes as requested and there is nothing in the record to indicate that defendant requested funds which were denied.

Defendant's contention that his sentence was harsh and excessive fails. Defendant has not demonstrated that County Court abused its discretion in imposing sentence or that extraordinary circumstances exist warranting a reduction in the sentence (see, People v Tinning, 142 AD2d 402, 408-409, lv denied 73 NY2d 1022).

We reject defendant's claim that County Court improperly failed to hold a hearing on his CPL 440.10 motion alleging that he was denied the effective assistance of counsel because his counsel tried to establish a defense of emotional disturbance and intoxication rather than factual innocence. Defense counsel did argue that defendant was not the perpetrator of the murder and, alternatively, that the People failed to establish that defendant had the required mental culpability for murder in the second degree. This approach was tactical and is not a valid basis for a claim of ineffective assistance of counsel (see, People v Satterfield, 66 NY2d 796, 798-799; see also, People v Baldi, 54 NY2d 137, 147-149).

Defendant's assertion that County Court abused its discre-

tion when it denied his CPL 440.10 motion (claiming that the State Police tampered with certain evidence) without a hearing is without merit. This claim is based on conclusory allegations that two former State Troopers, David Harding and Robert Lishansky, subsequently convicted in an unrelated case for evidence tampering and perjury, tampered with the evidence in this case. However, Harding and Lishansky did not admit to tampering with any evidence in the instant case. Further, State Police Investigation reports and an affidavit submitted by the People established that neither Harding nor Lishansky played any significant role in the investigation and proof of the homicide. Only one item of evidence introduced at trial, the victim's shoes, was handled by Harding and there is no indication that the shoes could have been or were tampered with. Neither Harding nor Lishansky were involved in the processing of defendant's truck for latent fingerprints. Lishansky did examine a latent, partially identifiable print of defendant on a beer bottle in the back of the truck, but the fingerprint was not introduced into evidence because the People believed it was not probative.

There was some evidence that a fingerprint, print No. 8, was apparently missing. However, this print was lifted by State Police Investigator Richard McOmber, not by Harding or Lishansky. McOmber satisfactorily explained how the apparently missing print was due to error on his part. Further, there is no evidence that print No. 8 ever existed. There was no showing of any conduct that caused prejudice to the defense that there was a probability that the verdict would have been different or that there was a reasonable possibility that evidence tampering occurred (*see*, CPL 440.30 [4] [d]; *People v Cutting*, 210 AD2d 791).

Defendant's claim that he was denied the right to counsel because he was questioned about Newhart's homicide when he was represented by counsel in an unrelated matter is rejected. In *People v Bing* (76 NY2d 331), it was held that a defendant's right to counsel is not violated when a defendant is questioned by the police on a matter unrelated to a pending charge for which the defendant is represented by counsel. The *Bing* decision is to be applied retroactively (*see*, *People v Adams*, 194 AD2d 102; *People v Vail*, 182 AD2d 331, 332-333, *lv denied* 81 NY2d 977).

Defendant's argument that his right to be present at critical stages of his trial was violated during the *Sandoval* hearing, at the *Ventimiglia* hearing and during voir dire of several jurors lacks merit. Defendant was in fact present during the critical

phases of the *Sandoval* discussions when counsel presented argument and County Court made its ruling. Moreover, County Court's *Sandoval* rulings were partially favorable to defendant, who was not prevented from taking the stand as a result. Although defendant was not present for portions of the *Ventimiglia* hearing, County Court decided all the *Ventimiglia* issues in defendant's favor. Thus, defendant was not prejudiced by these rulings and his presence would have been superfluous.

As to defendant's argument that he was not present in chambers during County Court's interviews with several jurors, the extent to which he was not present is not clearly reflected in the record. In any event, this requirement was articulated by the Court of Appeals in *People v Antommarchi* (80 NY2d 247), decided in October 1992, well after defendant's trial. The decision in *Antommarchi* is only to be applied prospectively (*People v Mitchell*, 80 NY2d 519). Consequently, the manner of questioning jurors did not result in reversible error.

We have considered defendant's other claims of error presented on these appeals and find them to be without merit.

Mercure, White, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment and order are affirmed.