■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JESUS MORALES, Also Known as JESUS MORALES GOTAY, Respondent.—Order, Supreme Court, New York County (Dorothy A. Cropper, J.), entered January 10, 1986, which granted defendant's motion to suppress a loaded .38 caliber revolver and defendant's statements made to the police, is reversed, on the law and on the facts, motion is denied, and the matter is remanded for further proceedings.

On August 3, 1982, New York City Police Detective Joseph Carrano (Detective Carrano) arrested defendant. Thereafter, by a 1982 indictment, a New York County Grand Jury charged defendant with two counts of the crime of criminal possession of a weapon in the third degree (Penal Law § 265.02 [1]). Following indictment, defendant moved to suppress physical evidence, and statements.

In response to defendant's motion, Criminal Term held a hearing, on September 6, 1983, and the only witness was Detective Carrano. The facts set forth, infra, are from our examination of the hearing transcript.

At the time of the arrest, Detective Carrano had been a member of the Police Department for more than 20 years, and, had been a detective for more than 13 years.

On August 3, 1982, at approximately 4:15 P.M., while he was on duty in the 7th Precinct detective's office, a Ms. Barbara Darden (Ms. Darden) came to that office seeking assistance. Ms. Darden told Detective Carrano, in substance, she was a New York City social worker; one of her clients was Ms. Eva Rodriguez (Ms. Rodriguez), who resided in apartment 2F,

located at 460 Grand Street; Ms. Rodriguez had complained to her that the defendant, who was Ms. Rodriguez' husband, had used a gun to threaten Ms. Rodriguez and the children; while Ms. Darden was visiting Ms. Rodriguez' apartment earlier that day she saw a gun on the bedroom dresser; and, Ms. Rodriguez wanted that gun out of the apartment, since she was concerned for her children.

Subsequent to receiving this information, Detective Carrano, his partner, and Ms. Darden left the precinct, and went directly to the subject apartment. When they arrived, Ms. Rodriguez voluntarily admitted them into the apartment, escorted them to the bedroom, where she indicated to them "a gun * * * on the dresser", which Detective Carrano retrieved. According to Detective Carrano's testimony "that gun appeared to be a .45 caliber automatic."

Furthermore, Ms. Rodriguez told Detective Carrano that defendant was carrying another gun, and, at that very moment, he was working as a maintenance man in the apartment building. Thereafter, Detective Carrano went to the lobby, where he found defendant, whom he knew upon the basis of previous conversations about crimes which had occurred in that building.

Although Detective Carrano acknowledged in his testimony an intention to arrest defendant at some point for the possession of the gun recovered in the bedroom, when he initially approached defendant, Detective Carrano neither expressed such intention to the defendant, by action or deed, nor did he draw his service revolver.

Without advising defendant of his *Miranda* rights, Detective Carrano introduced himself to defendant. Thereafter, Detective Carrano testified, in pertinent part:

"[I] asked him [the defendant] if he was carrying a gun on him.

"And he told me, 'No,' at which time I frisked him. And he informed me that the gun that the People say he was carrying was locked up in the storeroom on the main lobby floor.

"I asked him to take me to the gun at which time he took me to a storeroom.

"He opened up the door with a key. We entered the room. There was a desk in the room. He opened up the lefthand drawer of the desk. I asked him to move away from the desk and I retrieved the gun from the lefthand drawer. And that was a .38 caliber revolver that was fully loaded * * *

"At this time I placed [the defendant] under arrest and I took him to the 7th Precinct".

Mr. Michael Reese (Mr. Reese), who was the building manager and the defendant's employer, was allowed to accompany defendant to the precinct, where defendant was placed in a holding cell. With Detective Carrano's permission, Mr. Reese was permitted to speak privately with defendant.

In the precinct, Detective Carrano, *inter alia,* informed defendant of his *Miranda* rights, and told him about the first gun that had been recovered from the bedroom, mentioned, *supra.*

Later, while defendant's arrest was being processed, Ms. Darden returned to the precinct, and told Detective Carrano there was a second gun in the apartment. In substance, Ms. Darden informed Detective Carrano that a short time before, Mr. Reese had come to Ms. Rodriguez' apartment, and told Ms. Rodriguez that the defendant said there was a gun in a box by the radiator, and, that she should get rid of it. Furthermore, Ms. Darden told Detective Carrano she had overheard this conversation between Mr. Reese and Ms. Rodriguez, while hidden in the bathroom, at Ms. Rodriguez' request. In response to this new information about a third gun, Detective Carrano, together with Ms. Darden, went back to the apartment. When they arrived, Ms. Rodriguez admitted Detective Carrano, told him she had found another gun, which was a loaded .32 caliber revolver, and she gave it to him.

Although the hearing court found Detective Carrano's testimony credible, it granted defendant's motion to suppress the gun found in the storeroom, as well as the statements defendant made before arrest to Detective Carrano. Thereafter, the People appealed, and this court affirmed, without opinion *(People v Morales,* 106 AD2d 927 [1st Dept 1984]). Subsequently, the People obtained leave to appeal to the Court of Appeals.

In a memorandum decision *(People v Morales,* 65 NY2d 997 [1985]), the Court of Appeals reversed, upon the authority of *Berkemer v McCarty* (468 US 420 [1984]), and held, in substance, that Criminal Term erred in finding, as a matter of law, that a person who is frisked is automatically in custody, so as to require that *Miranda* warnings be given before questions may be asked. Furthermore, the Court of Appeals explained in *People v Morales (supra,* at 998), in pertinent part:

"There is a clear distinction between a stop and frisk

inquiry and a forcible seizure which curtails a person's freedom of action to the degree associated with a formal arrest [citation omitted]. Thus, questioning after a frisk, without more, does not constitute custodial interrogation [citations omitted] * * * [T]he issue of whether a suspect is in custody is generally a question of fact * * *

"The matter should, therefore, be remitted to Criminal Term so that defendant's motion can be decided in accordance with these principles. The determination should be made on the record of the prior hearing; *a new hearing is not required* [citations omitted]" (emphasis supplied).

On remand, without a hearing, and after oral argument, Criminal Term again granted defendant's motion to suppress physical evidence and statements.

We disagree.

Applying the principles enunciated by the Court of Appeals in *People v Morales (supra)* to the facts of the instant case, we find that Detective Carrano did not, after the frisk, undertake a custodial interrogation, since the defendant was not in custody. Besides not restraining defendant's freedom of movement in any manner that would indicate a formal arrest, Detective Carrano neither drew his gun nor evidenced any conduct that would indicate any hint of official force that is normally associated with custody. In other words, in the instant case, the objective evidence indicates there was nothing more than a frisk, followed by a couple of noncoercive questions, which the defendant voluntarily answered. We further find that Detective Carrano's actions in respect to his encounter with defendant, prior to the recovery of the gun in the storeroom, would not have indicated to a reasonable man, innocent of any crime, that such a person was in custody *(see, People v Yukl,* 25 NY2d 585, 589 [1969]; *People v Hicks,* 68 NY2d 234, 240 [1986]).

Accordingly, we reverse, and deny defendant's motion. Concur—Murphy, P. J., Ross, Milonas and Ellerin, JJ.

Kupferman, J., dissents in a memorandum as follows: I dissent and would affirm for the reasons given by Judge Cropper on remittitur and would grant the defendant's motion.