■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES GODDARD, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Lakritz, J.), rendered December 18, 1986, convicting him of murder in the second degree, assault in the first degree (two counts) and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress certain statements.

Ordered that the judgment is affirmed.

On the night of October 12, 1985, the defendant became embroiled in an argument with his former girlfriend and her then-current boyfriend, Steven Quattlebaum, the deceased, outside the Quattlebaums' Queens home. As Ethel Quattlebaum attempted to convince her son to come into the house, the defendant fired 3 or 4 shots, killing Steven Quattlebaum and injuring his mother.

Detectives Richard DeRosa and Edward Granshaw investigated the incident and were advised by Mrs. Quattlebaum that the defendant had committed the shooting. Having ascertained the defendant's address as well as his "hangouts", the detectives set out to find the defendant in order to arrest him. Detective Granshaw knew the defendant from a prior arrest.

At about 4:25 A.M., on the morning after the shooting, the detectives spotted the defendant in front of a "numbers spot"

he was reputed to frequent. They approached the defendant, shields in hand, and Detective DeRosa addressed the suspect: "James, you got a problem." The defendant responded, "Yeah, I know", and the detectives proceeded to pat him down for a gun. Detective DeRosa then asked, "Where's the piece [gun]", and the defendant stated that it was in good hands. The defendant was then handcuffed and placed in the patrol car.

En route to the precinct, the defendant was advised of his *Miranda* rights, which he acknowledged understanding. Detective DeRosa related the ensuing conversation: "I asked him again if it would be a good idea to get the piece off the street before somebody else got hurt. And he advised me that, 'I don't have to worry about that, it was in good hands. * * *' He advised me that Steven got what he deserved because he embarrassed him".

The defendant's challenge of the hearing court's denial of his motion to suppress the statements made to the detectives at the time of his arrest is predicated on his characterization of the initial police inquiry as custodial in nature. Therefore, he argues, *Miranda* warnings should have preceded any questioning, and the statements uttered both before and after he was advised of his rights were subject to suppression, the former as involuntarily made and the latter as tainted "fruit of the poisonous tree". We disagree.

The appropriate inquiry in this context "is not what the defendant thought, but rather what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position" *(People v Yukl,* 25 NY2d 585, 589, *cert denied* 400 US 851). The detectives' conduct in simply approaching the defendant on the street while displaying their shields and announcing that he had "a problem" would not have indicated to a reasonable person *innocent* of any crime that he was in custody *(see, People v Morales,* 129 AD2d 440). The defendant's reliance on both the detectives' intent in initiating the inquiry and his beliefs at the time is misplaced, for the Court of Appeals has made it clear that it has "rejected as standards for determining when a de facto arrest has taken place the wholly subjective belief of the officer, as well as that of the citizen" *(People v Hicks,* 68 NY2d 234, 240). Nor does the subsequent pat down or inquiry regarding the location of the gun, especially when the police knew one person had been killed and another person had been shot, render the atmosphere under which the questioning was conducted any more compelling or intrusive so as to have constituted a custodial interrogation *(see, People v Hicks, supra,* at 239;

*People v Morales,* 65 NY2d 997, *appeal after remand* 129 AD2d 440, *supra).*

The defendant's assertion of error regarding the trial court's failure to have instructed the jury to make the factual determination of whether the defendant voluntarily made the statements attributed to him and to "disregard such evidence upon a finding that the statement was involuntarily made" pursuant to statutory mandate (CPL 710.70 [3]) is not preserved for appellate review, since the defendant neither requested the instruction nor excepted to the charge as given *(see, People v Cerrato,* 24 NY2d 1, 10; *People v Cefaro,* 23 NY2d 283, 289), and we decline to exercise our interest of justice jurisdiction to consider the claim.

Moreover, the defendant's request for a missing witness charge as to his former girlfriend's failure to testify was properly denied. While, as the People concede, the defendant sustained his initial burden of establishing that the eyewitness possessed information about a material issue, the People satisfactorily demonstrated that the transient witness, whom they made diligent efforts to locate, was neither available nor within their control *(see, People v Gonzalez,* 68 NY2d 424, 427-429).

We have considered the remaining contentions asserted in the defendant's *pro se* supplemental brief and find them to be without merit. Bracken, J. P., Eiber, Spatt and Rosenblatt, JJ., concur.