(May 16, 1991)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL A. SLATER, Appellant.—Crew III, J. Appeal from a judgment of the County Court of Sullivan County (Hanofee, J.), rendered June 16, 1989, upon a verdict convicting defendant of the crimes of murder in the second degree (four counts), burglary in the first degree (two counts), rape in the first degree, sodomy in the first degree, criminal possession of a weapon in the third degree (two counts) and petit larceny.

On the morning of March 8, 1988 Robert McCarvel arrived at his home at 34 Grant Street in the Village of Liberty, Sullivan County, and found his deceased wife lying on her back on the kitchen floor with a hammer sticking out of her right temple. McCarvel immediately alerted the police who began an intensive investigation. Sometime in the early evening of that day, a local cab driver was interviewed and revealed that he had made two deliveries to the McCarvel residence the previous night between 12:00 A.M. and 2:00 A.M. of food, beer and cigarettes. He stated that on both occasions he was met at the door by a white male in his teens or early 20s and that during the second delivery he heard music and a female voice in the background. The police received information that defendant had visited a woman at 38 Grant Street in the Village in the early morning hours of the day of the murder and was in possession of a quantity of $50 bills. McCarvel had previously advised the police that a quantity of money was missing from his home which was comprised largely of $50 bills. Armed with this information State Police investigators went to defendant's residence, where they were met by his landlord who escorted them to defendant's room. The investigators informed defendant that they were investigating an assault and requested that he accompany them to the State Police substation, which he agreed to do.

While at the substation defendant sat alone in a room while various investigators were engaged in interviewing other people. At some point they began questioning defendant, preceded

by a recitation of his *Miranda* rights. Defendant acknowledged the import of those rights and expressed a willingness to assist the police in their investigation. Defendant initially claimed that he had been at home the entire evening. However, he ultimately admitted being at the victim's home but denied any involvement in her death. During questioning, defendant consented to having his picture taken and a photo array was displayed to the cab driver who identified defendant as the person to whom he had made the deliveries. Sometime after 11:00 P.M. defendant told one of the investigators that he wanted to speak to him regarding the crime. He then explained that he and "David McCarvel" were present when the victim was stabbed by a man defendant identified as "Alan". During this sequence of events, the police obtained a search warrant for defendant's room and upon execution of the warrant found various items of blood-stained clothing. At approximately 3:00 A.M. defendant was confronted with this fact, at which time he related that on the night of the homicide he had gone to the McCarvel residence where he watched television, played poker and drank beer with the victim. He further stated that they had sex on the couch and thereafter he choked, stabbed and hit the victim in the head with a hammer. Defendant was then arrested and subsequently indicted and convicted for murder, burglary, rape, sodomy, criminal possession of a weapon and petit larceny.

On this appeal defendant contends, *inter alia,* that County Court erroneously denied his suppression motion, that the search warrant was not supported by probable cause, that the court improperly denied his request for an adjournment and that the convictions for rape and sodomy were against the weight of the evidence.

Following the suppression hearing, County Court found as a matter of fact and law that defendant was not subject to custodial interrogation until 11:00 P.M. and that his statements made thereafter were voluntarily and knowingly made following an intelligent waiver of his constitutional guarantees. Defendant testified at his suppression hearing and his testimony was in sharp conflict with that of the investigating officers. It is axiomatic that on our review of the record, we should afford great deference to the determination of the hearing court which had the opportunity to see and hear the witnesses *(see, People v Flores,* 153 AD2d 585, *lv denied* 75 NY2d 770). Additionally, where conflicting inferences may be drawn from the proof adduced, the inference chosen by the trier of the fact should be honored unless unsupported as a

matter of law *(People v Yukl,* 25 NY2d 585, *cert denied* 400 US 851). Here, the relevant facts about which conflicting testimony was presented were indeed numerous and, in each instance, County Court credited the testimony of the police investigators over that of defendant. We decline to disturb the court's findings. Additionally, from the testimony adduced from the police investigators it cannot be said, as a matter of law, that County Court erred in concluding that the defendant was not "in custody" throughout the questioning from 8:00 P.M. until 11:00 P.M.

We next reject defendant's argument that the search warrant application was defective. Defendant contends that the facts provided to the issuing Magistrate by State Police Investigator Edward McKenna in his application were based upon information he received from other law enforcement officers involved in the investigation and were therefore hearsay requiring supporting affidavits from the officers who spoke with defendant, the cab driver and the woman who had seen the $50 bills in defendant's possession (CPL 690.35 [2] [c]). We have previously held that the affidavit of a police officer based upon observations of a fellow officer engaged in a common investigation furnishes a reliable basis for a warrant applied for by any of them *(People v Cuyler,* 44 AD2d 881; *see also, People v Montague,* 19 NY2d 121, *cert denied* 389 US 862). To the extent that *People v Fromen* (125 AD2d 987, *lv denied* 69 NY2d 880) holds otherwise, we disagree. Also rejected is defendant's suggestion that the application was defective in not having established the reliability of the cab driver and the woman who had observed defendant in possession of the $50 bills. Unlike the case of a confidential informant, where a citizen provides information to the police, the need to establish his or her reliability is unnecessary *(see, People v Hicks,* 38 NY2d 90; *People v Bakker,* 133 AD2d 161; *People v Brown,* 95 AD2d 569). Furthermore, the reliability of the information provided by the cab driver and the woman was established by the fact that they were speaking from firsthand knowledge *(see, People v Hendricks,* 25 NY2d 129, 134). In any event, the subject search of defendant's apartment was valid without the warrant since it was predicated upon a consent to search signed by defendant and found by County Court to have been voluntarily obtained *(see, e.g., People v Carter,* 30 NY2d 279).

Similarly without merit is defendant's contention that County Court improperly denied his request for an adjournment. On April 21, 1989 defendant, by order to show cause, requested that the court relieve Legal Aid as his counsel or, in

the alternative, grant a four-week continuance to permit John Ferrara, the attorney assigned to his case, to become familiar with it. In his affidavit in support of his motion defendant asserted the lack of visits by Legal Aid with him, the lack of meaningful discussions concerning his case, the failure to provide him with explanations of the law and procedures, and the failure to provide proper representation throughout the proceedings. That motion was heard on April 24, 1989 and, while a record was apparently not made of the argument, it is clear that the People and defendant were provided an opportunity to be heard. From a review of the record it appears that the attorneys from Legal Aid visited and conferred with defendant on at least nine separate occasions prior to trial. Additionally, attorneys from Legal Aid appeared in court on defendant's behalf on March 25, 1988, May 4, 1988 and May 23, 1988 with regard to various pretrial discovery matters requested on behalf of defendant. Defendant was represented by Legal Aid at a combined *Huntley, Mapp* and *Wade* hearing on March 15, 16, 17 and 30, 1988. Furthermore, Ferrara's affirmation in support of defendant's application for a continuance asserted that, although he felt reasonably prepared to proceed with the trial because of the importance of the case, he wished to proceed cautiously and to be fully prepared for trial. Ferrara conceded in his affirmation that he had been given full access to the exhibits and photographs by the District Attorney, who had been candid about what he believed would be the testimony of the witnesses. As a backdrop to this, it should be noted that on January 24, 1989 County Court informed the People and Legal Aid that the pretrial hearing would be held on March 15, 1989, that the trial would commence immediately thereafter and that there would be no adjournments.

It is clear that whether an adjournment of a case should be granted is a matter of discretion for the trial court *(People v Vargas,* 150 AD2d 513, *lv denied* 74 NY2d 853). Furthermore, in asserting that a trial court abused its discretion, a defendant must demonstrate resulting prejudice *(see, People v Critzer,* 97 AD2d 878). Here, defendant has not alleged, nor can we find from a review of the record, that any prejudice resulted from County Court's denial of the motion for a continuance. Finally, defendant alleges in his brief that trial counsel interposed a defense of extreme emotional disturbance contrary to his express instruction not to do so. Nothing in the record substantiates that claim. Insofar as this argument can be seen to constitute an attack on trial counsel's tactics, it has

been observed that "care must be taken to 'avoid both confusing true ineffectiveness * * * with mere losing tactics and according undue significance to retrospective analysis' " *(People v Satterfield,* 66 NY2d 796, 798, quoting *People v Baldi,* 54 NY2d 137, 146). Under the circumstances of this case, we find that County Court did not err in refusing to relieve Legal Aid of its representation of defendant or in refusing to grant a continuance, and we further find that defendant was afforded effective and meaningful assistance of counsel.

Finally, we reject defendant's assertion that the convictions for rape and sodomy were against the weight of the evidence. The facts in this case, viewed in a light most favorable to the People *(see, supra),* reveal that McCarvel arrived home to find his deceased wife lying on the floor in the kitchen. She was on her back, her arms stretched above her head with a hammer in her right temple. Her blue and white nightshirt was pushed up above the navel, she was naked from the waist down, her legs were spread apart and her pink sweatpants were pushed down to and twisted around her ankles. An autopsy revealed that she had sustained 16 stab wounds in her upper chest, two depressions of the skull in addition to the one created by the hammer, her left eye was markedly swollen and blue, she had abrasions on her elbows, knees and the left side of her neck, and her left lower jaw was bruised. Additionally, well preserved sperm was found in her vagina and anus. Defendant admitted that he had sex with the victim and said that he thought "she was willing", but denied that he had engaged in anal intercourse. Contrary to the physical evidence found at the scene, defendant testified that he removed the victim's pants and they then engaged in intercourse. Finally, it was the opinion of the medical experts that the cause of death was extensive loss of blood. Upon this evidence, a jury could reasonably conclude, which it obviously did, that defendant brutally assaulted the victim and when she could no longer resist, he raped and sodomized her as she lay bleeding to death.

As to defendant's other arguments, they have been examined and found lacking in merit. The judgment of conviction should therefore be affirmed.

Judgment affirmed. Mahoney, P. J., Mikoll, Levine, Crew III and Harvey, JJ., concur.