■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD ESPOSITO, Appellant. [594 NYS2d 424] —Mahoney, J. Appeal from a judgment of the County Court of Albany County (Keegan, J.), rendered April 6, 1992, upon a verdict convicting defendant of the crime of manslaughter in the second degree.

The conviction on appeal arises from the February 1, 1990 death of 13-month-old Nicholas Bodah (hereinafter Nicky) while in defendant's care. An autopsy revealed the presence of multiple contusions and abrasions on the head, chest and extremities and attributed the cause of death to multiple intracranial hemorrhages and blows to the skull. Following

receipt of the autopsy report, the completion of a search of defendant's apartment and the taking of statements, defendant was indicted on the charge of murder in the second degree in connection with Nicky's death. While defendant consistently maintained that the death was accidental, claiming initially that Nicky's injuries resulted from a tumble off the living room sofa onto the carpet and later retracting it and substituting at trial the claim that the injuries occurred when Nicky squirmed out of defendant's grasp as the latter was removing him from the bathtub, fell and hit his head on the edge of the tub, this defense met with only partial success. The jury ultimately found defendant guilty of the lesser included offense of manslaughter in the second degree. He was sentenced to an indeterminate 5- to 15-year term of incarceration. Claiming violation of his 4th Amendment rights, numerous trial errors and ineffective assistance of counsel, defendant now appeals.

Defendant's 4th Amendment argument centers around the warrantless search of his apartment conducted prior to defendant's arrest (shortly after Nicky had been transported to the hospital) and the subsequent seizure of certain items therefrom. Following a suppression hearing whereat conflicting evidence was presented by defendant on the one hand and the police on the other regarding the circumstances under which the police gained access to the apartment, County Court credited the testimony of the police officers that defendant initially had consented to their entry so that one officer could use the telephone and, while this was being accomplished, voluntarily led the other officer on a tour of the apartment as he explained his version of the events that had transpired. During the tour, the incriminating evidence ultimately seized or noted (a bloodstained sofa cushion, the condition of the bathroom, wet bathroom towels, the condition of the kitchen) was in plain view. Inasmuch as credibility determinations made by the suppression court are to be accorded great deference (see, e.g., People v Prochilo, 41 NY2d 759, 761; People v Slater, 173 AD2d 1024, 1025-1026, lv denied 78 NY2d 974), and it is apparent from a review of the suppression hearing transcript that County Court's determination is supported as a matter of law (see, People v Slater, supra; People v Ingraham, 172 AD2d 870), we decline to disturb it.

In this regard, we note that the utterance by one of the officers of an apparent falsehood as an excuse to attempt to

gain access to defendant's apartment[1] did not operate to vitiate the voluntariness of defendant's consent as a matter of law. It is well established that "[t]he use of deception does not destroy the voluntariness of a consent per se unless the deception is so fundamentally unfair as to deny due process" *(People v Abrams,* 95 AD2d 155, 157; *see, People v Entzminger,* 163 AD2d 138, 141-142, *lv denied* 76 NY2d 939; *cf., People v Tarsia,* 50 NY2d 1, 11; *People v Pereira,* 26 NY2d 265, 266-267; *People v McQueen,* 18 NY2d 337, 346). When placed in context with the events of the entire evening, namely the compliant attitude defendant displayed toward the police throughout the evening and prior to utterance of the falsehood, his consent (by conduct) to the entry of a second officer along with the first who made no misrepresentation whatsoever in order to gain access *(cf., People v Davis,* 120 AD2d 606, 607, *lv denied* 68 NY2d 769), and his voluntarily taking the second officer on a tour of the premises once inside, it is apparent that defendant intended from the start to fully cooperate with the police. Against this backdrop it cannot be said that the telephone ploy served to coerce defendant's cooperation so as to undermine the validity of his consent *(see, People v Entzminger, supra; People v Abrams, supra).* It thus being clear that defendant consented to police entry, the officers were justified in seizing that which was in plain view *(see, e.g., People v Jackson,* 41 NY2d 146, 149-150; *People v Thompson,* 128 AD2d 566, 567, *lv denied* 73 NY2d 983).

We have reviewed defendant's remaining contentions and find them to be without merit. Defendant's claim that County Court committed reversible error by failing to include in the jury's charge the CPL 710.70 (3) instructions with respect to the voluntariness of his pretrial statement to police has not been preserved for appellate review due to defendant's failure specifically to object to instruction of the statement on voluntariness grounds, his failure to request the CPL 710.70 (3) charge or to object to the charge as given *(see, People v Jackson,* 178 AD2d 851, 853, *lv denied* 79 NY2d 1002; *People v Goddard,* 150 AD2d 794, *lv denied* 74 NY2d 809; *People v Faber,* 83 AD2d 883; *cf., People v Cefaro,* 23 NY2d 283, 288-289). Moreover, upon a reading of defendant's argument in this regard accompanied by the fact that, as conceded by defendant at trial, the statement at issue contained only innocuous, noninculpatory types of admissions regarding es-

[1]. The officer asked if he could use defendant's telephone to contact a detective when it appeared that he could have contacted the detective by using the radio in his police car.

sentially undisputed facts, we are disinclined to reverse on this issue in the interest of justice.

Briefly addressing the remaining arguments, even setting aside the fact that many of the asserted instances of prosecutorial misconduct relied upon by defendant to support his lack of a fair trial argument were not properly preserved for review, upon a reading of the trial testimony and a review of both sides' opening and closing arguments, we are satisfied that the prosecutor's opening and summation were within acceptable bounds and are convinced that the few discernible trial errors were minor and not so prejudicial as to have deprived defendant of his constitutional right to a fair trial. Finally, we find that defendant was zealously represented at all stages of the proceedings and that, under the circumstances and on the record presented here, counsel's failure to pursue the issue of the voluntariness of defendant's statement at trial[2] did not operate to deprive defendant of meaningful representation *(see, e.g., People v Baldi,* 54 NY2d 137).

Weiss, P. J., Levine, Mercure and Harvey, JJ., concur. Ordered that the judgment is affirmed, and matter remitted to the County Court of Albany County for further proceedings pursuant to CPL 460.50 (5).

---

2. A *Huntley* hearing had been held prior to trial wherein the statement was found by the hearing court to have been voluntarily made.