(May 22, 2012)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS BAEZ, Appellant. [944 NYS2d 539]—

Judgment, Supreme Court, New York County (Ronald A. Zweibel, J., at suppression hearing; Roger S. Hayes, J., at jury trial and sentencing), rendered December 11, 2009, convicting defendant of criminal possession of a weapon in the third degree and sentencing him, as a second felony offender, to a term of two to four years, affirmed.

Defendant claims that the motion court should have suppressed his self-incriminating response to police questioning because he was not given *Miranda* warnings. During a traffic stop, police officers ordered the vehicle's five occupants to get out and gather behind the vehicle after the officers observed defendant, who was sitting in the rear, reach into the seat pocket in front of him and manipulate an object. An officer retrieved a gravity knife from the seat pocket and, without first administering *Miranda* warnings, threatened that unless the knife's owner came forward, he could arrest the entire group. Defendant then admitted that the knife was his.

The court denied defendant's motion to suppress the confession, finding that he "was not yet in custody for *Miranda* purposes" when he confessed and that questioning the group did not constitute an interrogation. We find that defendant was subjected to a custodial interrogation and accordingly should have received *Miranda* warnings (*see Miranda v Arizona*, 384 US 436, 444 [1966]). The standard for determining if a suspect is "in custody" when making a statement is "whether a reasonable person, innocent of any crime, would have felt free to leave" (*People v Harris*, 48 NY2d 208, 215 [1979]). When he confessed, defendant was one of five people who had first been ordered to get out of their car and stand behind it. An officer approached

the group while holding the gravity knife he had recovered and threatened them with the possibility of arrest if the knife's owner did not identify himself. Under these circumstances, no reasonable person would have believed that the police had not restricted his or her freedom of movement and that he or she was free to leave.

The concurrence does not consider the officer's statement as a threat because he said he "could" arrest the group instead of promising that he "would" arrest them, but we do not view this distinction as material. Any reasonable person in defendant's circumstances would have perceived the statement as coercive.

Moreover, the police officer's threat to arrest the entire group if the owner did not come forward was the functional equivalent of interrogation under *Miranda,* given that the police knew or should have known that the statement "[was] reasonably likely to elicit an incriminating response" (*People v Ferro,* 63 NY2d 316, 322 [1984], *cert denied* 472 US 1007 [1985] [internal quotation marks omitted]; *see People v Creary,* 61 AD3d 887, 889 [2009]). In *Creary,* the defendant was a passenger in a car from which the police recovered a gun (61 AD3d at 888). Before the defendant received *Miranda* warnings, he confessed to an officer that the gun was his after the officer advised him that, unless the police learned who owned the gun, they would charge all the car's occupants with its possession (*id.* at 888-889). The court ruled that the confession should have been suppressed because the officer's statement amounted to interrogation (*id.* at 889).

The concurrence views the officer's question to the group as "permissible clarifying inquiry" as opposed to interrogation, but it overlooks that the officer coupled the question with intimidation by threatening arrest. Thus, the questioning was designed not merely to clarify the situation but also to elicit defendant's inculpatory response (*see People v Bastian,* 294 AD2d 882, 884 [2002], *lv denied* 98 NY2d 694 [2002]; *People v Santarelli,* 268 AD2d 603, 604 [2000], *lv denied* 94 NY2d 952 [2000]; *cf. People v Maldonado,* 184 AD2d 590, 590 [1992]).

However, reversal is unnecessary since at trial the People presented overwhelming proof of defendant's guilt, including the knife retrieved from the seat pocket defendant had reached into and defendant's recorded admission, during a phone call he made while incarcerated, that he had been arrested because he "had a punk-ass knife in the car." In light of this evidence, the erroneous admission of the defendant's incriminating statement at the scene was harmless error (*see People v Crimmins,* 36 NY2d 230 [1975]; *People v Paulman,* 5 NY3d 122, 134 [2005]). Concur—Renwick, Freedman and Manzanet-Daniels, JJ.

Mazzarelli, J.P., and Andrias, J., concur in a separate memorandum by Mazzarelli, J.P., as follows: I agree with the majority that defendant's conviction should be affirmed. However, I disagree that defendant's statement that he owned the gravity knife should have been suppressed. Further, I do not believe that the issue needs to have been reached by the majority.

The police testimony at the suppression hearing can be summarized as follows. On December 27, 2008, at approximately 1:30 A.M., three police officers were in uniform and on routine patrol in their unmarked vehicle in the vicinity of 110th Street in Manhattan. There they observed a car rapidly passing them at about 30-50 miles per hour, changing lanes without signaling, and running through a red light. The officers pulled the car over and, as they approached, an officer observed that three or four people in the vehicle were moving from side to side, reaching, looking at each other and making a lot of hand movements. One of the officers saw defendant, who was sitting in the rear passenger-side seat, reach forward with both hands towards the pocket that was attached to the back side of the car's front seat. Another officer saw defendant placing something in or taking something out of the seat pocket. Fearing for his safety, the officer ordered the occupants out of the car.

After the occupants were removed from the car, defendant was patted down and then the group was told to step to the back of the car. One of the officers pointed his flashlight at the seat pocket in front of where defendant had been sitting and saw a knife. The officer was able to see the knife without touching the pocket, because the pocket was open about three to four inches. After he removed the knife from the car, the officer opened it and concluded that it was a gravity knife. The officer went to the rear of the car and asked the group who owned the knife, telling them that "[u]nless somebody claims responsibility for the knife, you can all be arrested." Defendant then acknowledged that he owned the knife and was arrested. The vehicle's owner and other occupants were allowed to leave in the car. The police did not issue any traffic tickets to the driver of the vehicle.

The only respect in which the testimony of the defense witnesses differed materially from the police testimony concerned what the officer said to the car occupants while holding the knife. According to the driver of the car and one of her passengers, the officer said that if no one acknowledged ownership of the knife, then everyone was "going to jail." However, the hearing court credited the testimony of the police witnesses as a whole. It declined to suppress defendant's statement that the

gravity knife belonged to him, finding that he was not in custody for *Miranda* purposes.

Prior to an interrogation, *Miranda* warnings must be given to any person who "has been taken into custody or otherwise deprived of his freedom of action in any significant way" (*Miranda v Arizona*, 384 US 436, 444 [1966]). "Custody" is "de facto arrest" (*People v Hicks*, 68 NY2d 234, 239-240 [1986]. The standard for determining whether a person is in custody, for purposes of whether *Miranda* warnings must be administered, is "[if] a reasonable man, innocent of any crime" would have considered himself to be in custody (*id.* at 240 [internal quotation marks omitted]). Under this standard, a person can be found to be free of custody even if he is interviewed at a police station (*see People v Yukl*, 25 NY2d 585, 589 [1969]). Further, the fact that the person was "advised" to accompany the police somewhere, rather than "requested" or "invited" to come, does not necessarily mean that he was in custody, because "[a]n assumption that one is required to cooperate with the police can hardly be equated with an arrest; every citizen has a duty to assist police officers up to the point of self-incrimination" (*id.* at 590, quoting *Hicks v United States*, 382 F2d 158 [DC Cir 1967]).

It is important to note that police roadside questioning of a "seized" motorist during a traffic stop does not by itself constitute custodial interrogation (*see People v Alls*, 83 NY2d 94, 99 [1993]). This is so even though a traffic stop significantly curtails the freedom of action of the driver and passengers of a detained vehicle, and "few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so" (*Berkemer v McCarty*, 468 US 420, 436 [1984]). Rather, roadside detentions have been held to be noncustodial, and reasonable initial interrogation attendant thereto has been held to be merely investigatory (*see People v Gutierrez*, 13 AD3d 268, 269 [2004], *lv denied* 4 NY3d 831 [2005]; *People v Williams*, 81 AD3d 993 [2011], *lv denied* 16 NY3d 901 [2011]; *People v Mathis*, 136 AD2d 746, 748 [1988], *lv denied* 71 NY2d 899 [1988]).

Because the initial direction of defendant and the others to stand behind the car they had been traveling in was incidental to the traffic stop, defendant and his companions were not in custody for *Miranda* purposes merely by dint of their detention there. Further, defendant does not argue that his freedom was restrained by any act of "official force that is normally associated with custody," such as handcuffing or drawing of weapons (*People v Morales*, 129 AD2d 440, 443 [1987]). Rather, he limits his argument to the contention that custody began when the

police collectively asked the group who owned the gravity knife. However, a reasonable, innocent person would not have believed that he was under the functional equivalent of arrest at that point. To the contrary, the question itself expressly stated that the entire group, not just defendant, was subject to arrest *only* if nobody spoke up. Further, as the majority has not set aside the court's credibility findings, it is bound by the police version of the testimony that the car occupants were told that failure to confess to ownership of the knife "can" lead to the arrest of all of the vehicle's occupants. Somehow, the majority characterizes this statement as a "threat" and as "intimidation." However, such an equivocal statement does not rise to the level of coercion that would be necessary to convince an innocent person that he was not free to leave (*contrast People v Reyes*, 77 AD3d 509 [2010] [defendant found to have been in custody for *Miranda* purposes where police told him they had a warrant for his arrest]).

Nor did the question constitute an interrogation designed to elicit an inculpatory statement from the defendant (*see People v Huffman*, 41 NY2d 29, 33 [1976]). *Miranda* warnings are only required where "criminal events at the crime scene have been concluded and the situation no longer requires clarification of the crime *or its suspects*" (*People v Soto*, 183 AD2d 926, 927 [1992] [emphasis added], citing *Huffman*, 41 NY2d at 34). Here, while the police could reasonably have concluded that a crime had been committed, they asked the question because they genuinely did not know who of the five people in front of them had committed it. Accordingly, the question did not cross the line from permissible clarifying inquiry to coercive interrogation (*see People v Velasquez*, 267 AD2d 64 [1999], *lv denied* 94 NY2d 886 [2000] [no *Miranda* warnings necessary in connection with a general question, addressed to a group of individuals removed from a vehicle, regarding ownership of a gun found therein]; *People v Nesby*, 161 AD2d 246 [1990], *lv denied* 76 NY2d 793 [1990] [where police were responding to burglary call and encountered a person inside an apartment which was open and had a broken lock, asking the person what he was doing there was not an interrogation that required *Miranda* warnings]). *People v Creary* (61 AD3d 887 [2009]), on which the majority relies, is readily distinguishable. There, when the interrogation took place the defendant and the two other passengers in his vehicle had already been arrested and taken to the station house. Additionally, the defendant was interrogated separately from the other suspects. Under those circumstances, not only was the defendant in a more vulnerable state of mind than defendant here and thus more likely to inculpate himself, but the

police were not dealing with sorting out an active crime scene. Most importantly, in *Creary* the police explicitly stated that they "would" charge all three suspects if the defendant did not confess to owning the gun in question. Again, this contrasts with the instant case, where the police merely stated that all of the suspects "can" be arrested if nobody concedes ownership of the gravity knife.

Of course, the majority agrees that the admissibility of defendant's statement was rendered academic by the harmless error doctrine as there is overwhelming evidence of defendant's guilt. Nevertheless, by addressing the *Miranda* issue, the majority has unnecessarily forced a strictly theoretical debate in which it misapprehends the settled law. The better practice in cases where, as here, there is overwhelming evidence of guilt, is to avoid a distracting, time-consuming and speculative discussion. After all, courts are supposed to refrain from passing on academic, hypothetical, moot, or otherwise abstract questions (*see Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 713-714 [1980]). Here, the majority has ignored that "fundamental principle of our jurisprudence" (*id.* at 713).